**BLANKROME**

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

*Phone:* (212) 885-5394
*Fax:* (917) 332-3809
*Email:* brett.ward@blankrome.com

February 3, 2025

**VIA ECF**

Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 10D South
Brooklyn, New York 11201

    Re:    *Tatari v. Durust*
               Case No. 1:24-cv-06930-CBA-SJB

Dear Judge Amon:

      In connection with this action, we respectfully submit this letter motion to request that this Court stay enforcement of this Court's Memorandum and Order dated January 29, 2025 (ECF Dkt. #67) granting Plaintiff's Petition for the Return of the Child to Turkey (the "Order"). We make this motion pursuant to Rule 62 of the Federal Rules of Procedure and Rule 8 of the Federal Rules of Appellate Procedure. Respondent intends to file a notice of appeal as soon as the final judgment is entered by this Court.

      Respondent seeks an expedited decision by this Court on this motion so that this matter may be resolved swiftly, consistent with the terms of the Hague Convention, especially in light of this Court's order that the child be returned to Turkey within fourteen days of the Order. See Chafin v. Chafin, 568 U.S. 165, 179–801 (2013) ("whether at the district or appellate court level, courts can and should take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation").[1]

      In the event this Court denies the relief sought herein, Respondent respectfully requests that this Court grant a brief administrative stay of two weeks to permit Respondent to seek a stay from the Court of Appeals for the Second Circuit. See Tereshchenko v. Karimi, No. 23 CV 2006, 2024 WL 195547, at *5 (S.D.N.Y. Jan. 18, 2024) (granting administrative stay so respondent could seek stay from the Second Circuit); Poix v. Santana, No. 22 CV 4980, 2022

---

[1] The Order was issued on January 29, 2025. Since that time, Respondent has been consulting with her counsel in Turkey to discuss the possibility of seeking relief from the Turkish Court, including in connection with the upcoming February 6, 2025 court appearance in Turkey.

**BLANKROME**

Honorable Carol Bagley Amon
February 3, 2025
Page 2

WL 16751915, at *2 (S.D.N.Y. Nov. 7, 2022) (granting brief stay of one week to so the respondent may seek emergency relief from the Court of Appeals).

**Respondent's Request for a Stay of the Order Should be Granted**

"Courts should apply the four traditional stay factors in considering whether to stay a return order: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Chafin, 568 U.S. at 179 (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). These factors are to be considered on a "sliding scale," such that a greater showing on one factor excuses a lesser showing on another factor. Thapa v. Gonzales, 460 F.3d 323, 334–35 (2d Cir. 2006).

Likelihood of Success on the Merits

In determining whether there is a likelihood of success on the merits, this Court is not required to find that Respondent's success is "more likely than not" in order to grant a stay. Hofmann v. Sender, 12-CV-8104, 2012 WL 8466673, at *1 (S.D.N.Y. Dec. 20, 2012) (granting stay of return order while noting that it is "unlikely that district courts will regularly invite reversal by finding that a respondent who has literally just lost is nonetheless more likely than not to succeed on the merits on appeal"); Sutherland v. Ernst & Young LLP, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) ("[T]he test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal."). Rather, if Respondent "shows 'serious questions' going to the merits of [her] appeal as well as irreparable harm, the stay may be granted if the balance of hardships 'tips decidedly'" in her favor, as it does here. Id.

There are serious questions pertaining to the merits of the Order, which weigh in favor of granting a stay. The Turkish Court has consistently ruled in favor of Respondent's sole custodial rights and against Petitioner's many attempts to curtail those rights, including by trying to prevent Respondent from relocating with the Child. This Court's conclusion that the July Order (Resp. Ex. L-3)—which expressly provides that Respondent "has the initiative to go abroad" because she has sole custody—is not based on a request by Petitioner to stop Respondent from moving abroad with the child is demonstrably in conflict with Petitioner's application to the Turkish Court. Rather, in the Turkish Court, the Petitioner expressed his concern that Respondent would "*abduct*" the Child (following his email to Respondent accusing her of abducting the child)—a term that Petitioner's own expert admitted means "relocate." (Tr. 74:24-75:9; 122:3-19). The Turkish Court rejected Petitioner's myriad motions that sought the Court to

BLANKROME

Honorable Carol Bagley Amon
February 3, 2025
Page 3

prevent Respondent's abduction. Those rulings are clearly and directly on point and now at odds with this Court's opinion.

Additionally, Petitioner has made many applications to the Turkish Court noting that Respondent relocated abroad with the child and claiming that such relocation was an improper "abduction." However, the Turkish Court did not admonish Respondent for moving to the United States with the Child, or even suggest that Petitioner had custodial rights that were violated by Respondent's relocation with the Child, even while proceedings are currently pending in front of the Turkish Court. This is because Petitioner has no custodial rights in Turkey, a fact Petitioner admitted in his filings to the Turkish Court, including by filing a change of custody proceeding which implicitly acknowledges Petitioner does not have custody of the child. The Turkish Court's many decisions that Respondent's custodial rights cannot be restricted are likely to be deemed controlling here on appeal because they are the definitive authority on Turkish law, and, as this Court clearly states in the Order, Petitioner's custodial rights are "defined by Turkish law." Dkt. #67 at 9. Petitioner's initiation of this lawsuit just weeks after receiving an order from the Turkish Court expressly concluding that Respondent had the unrestricted right under the divorce decree to relocate with the child because she was given sole custody is blatant forum shopping, in contravention of the very purpose of the Hague Convention—to "deter parents from crossing international boundaries in search of a more sympathetic court." Souratgar v. Lee, 720 F.3d 96, 102 (2d Cir. 2013) (citing Blondin v. Dubois (Blondin II), 189 F.3d 240, 246 (2d Cir. 1999) (citations omitted)).

Moreover, this Court's decision that the parties' divorce decree provided Petitioner with *ne exeat* rights is not only contradicted by the July Order but also by the divorce decree's grant of sole custody to Respondent. All of the experts at trial testified that sole custody rights in Turkey unequivocally allow a parent to relocate with their child. And, as this Court knows, the existence of *ne exeat* rights depends entirely on the law in the origin country. Hague Conv., Art. 3. Furthermore, Petitioner acknowledged that he cannot stop Respondent from moving abroad with the child, which is reflected in the divorce decree. This Court specifically noted that "there is no reason to doubt that [Petitioner] said what was recorded in the Decree." Dkt. #67 at 4 n.3. That acknowledgment is fully consistent with both the terms of the divorce decree and the July Order and is grounds for reversal.

Courts in this district have noted that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury" that must be demonstrated. Matter of Oberlander, No. 16-MC-2637, 2018 WL 9782699, at *1 (E.D.N.Y. Nov. 7, 2018). This Court itself observed in the Order that the central question of whether Petitioner has custodial rights under Turkish law—"is not as straightforward as it appears" and presents a "difficult case." Dkt. #67 at 1. This Court also indicated during the Court appearance

BLANKROME

Honorable Carol Bagley Amon
February 3, 2025
Page 4

on December 20, 2024 that "the issues are very difficult here" and "[i]t's a very close question." Although Respondent believes she is highly likely to succeed on appeal, this Court's own statements that Petitioner's custodial rights are not clear cut supports a finding that Respondent's appeal may, at the very least, have some merit, warranting a stay, especially in light of the irreparable injury that the child will experience absent a stay, as detailed below.

Irreparable Harm

The irreparable injury inquiry is one of "the most critical" factors in adjudicating stay applications. Nken, 556 U.S. at 433.  Given the Turkish Court's prior decisions stating that Respondent has sole custody and can go abroad with the child, there is a substantial risk that, if the child is returned to Turkey, the Turkish Court will grant Respondent permission to come back to America with the child.  That means that the child may return to Turkey only to come back to the United States, leading to unsustainable instability for the child.  This Court itself noted the harm to the child from being displaced.  Dkt. #67 at 1.

That irreparable harm will be exacerbated if Respondent is correct that she will succeed on appeal or if the Turkish Court finds that Respondent has the sole authority to determine where the child lives, consistent with her sole custodial rights and the Turkish Court's prior decisions. Indeed, the Supreme Court has specifically noted that "shuttling children back and forth . . . across international borders may be detrimental to those children." Chafin, 568 U.S. at 178; see also Kijowska v. Haines, 463 F.3d 583, 589–90 (7th Cir. 2006) (noting [i]t was best to continue the stay in force until the appeal was decided" in Hague Convention case to avoid "serious harm to the child" should the district court's order be reversed).

In addition, the child has been in the United States for nearly six months, is well-adjusted at school, and has expressed to two forensic psychologists that he is happy in the United States and does not want to return to Turkey. The child is in the middle of a school year, has made friends in the United States, and has a stable life and routine here with Respondent.  Disrupting the child's life in this manner, when the ultimate resolution of this case is uncertain, will cause irreparable harm to the child.  Radu v. Shon, No. 20 CV 246, 2020 WL 6741538, at *1–2 (D. Ariz. Nov. 17, 2020) (finding irreparable harm where "return to Germany during the pendency of Respondent's appeal would disrupt" the children's "stable living situation" and "interrupt their school year" and granting stay of return order).

Thus, the irreparable harm factor weighs heavily in favor of granting a stay of the Order.

Injury to Petitioner

BLANKROME

Honorable Carol Bagley Amon
February 3, 2025
Page 5

While the child will suffer irreparable injury absent a stay, Petitioner will not experience a similar injury from a brief extension of the status quo while Respondent's appeal (which she will seek to have expedited) is pending. Petitioner can visit the child at any time in the United States, and he has substantial financial resources to do so. He already has been able to exercise significant access with the child in the United States in December. He also can "continue to communicate with the child through electronic means" while the appeal is pending, which further reduces any risk of harm to Petitioner. See Karpenko v. Leendertz, No. 09 CV 3207, 2010 WL 996465, at *3 (E.D. Pa. Mar. 15, 2010) (granting stay and noting of the availability of electronic communications and supervised visitation in considering harm to the petitioner).

Thus, the potential injury to Petitioner should not prevent this Court from issuing a stay that protects the child from irreparable harm.

Public Interest

Lastly, public interest weighs in favor of a stay. There is a strong public interest in protecting children from further injury and unnecessary disruption to their stability and routine. The Supreme Court has noted that "the ends of the Convention and ICARA" are to "protect the well-being of the affected children" and that courts should achieve those ends "through the familiar judicial tools of expediting proceedings and granting stays where appropriate." Chafin, 568 U.S. at 178. "[T]he public interest lies in having [a] child returned to the [country of habitual residence] with the approval of [a court of appeals], but not prior to its decision." Karpenko, 2010 WL 996465, at*3 (noting "it would cause a great disservice to the public to allow the child to be returned to the Netherlands while the appeal is pending, only to have the Court of Appeals subsequently order her back to the United States").

Here, if this Court were to reject this request, the child would suffer from this precise injury and needless disruption to his stability and routine. The brief stay requested here is therefore consistent with public interest.

**Conclusion**

We therefore ask the Court to decide this motion on an expedited basis, grant Respondent's request for a stay of the Order or, if the Court denies the stay, grant a brief administrative stay of one week to permit Respondent to seek an emergency stay from the Court of Appeals given the urgent nature of this matter.

# BLANKROME

Honorable Carol Bagley Amon
February 3, 2025
Page 6

                                                Respectfully yours,

                                                *Brett S. Ward*

                                                Brett S. Ward

cc:    Richard Min, Esq. (via ECF)
        Michael Banuchis, Esq. (via NYSCEF)
        *Attorneys for Petitioner*